FILED

2017 May-08  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GRADE RESULTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CV: 2017_____** |
| | ) | |
| **ATHENS CITY BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | | |

## COMPLAINT

COMES NOW, Plaintiff Grade Results, Inc., and hereby files this Complaint against Defendant Athens City Board of Education.  In support of this Complaint, Plaintiff states as follows:

## PARTIES

1.      Plaintiff Grade Results, Inc., ("Plaintiff" or "Grade Results") is a Texas corporation with its principal place of business in Carrollton, Texas.

2.      Defendant Athens City Board of Education ("Defendant" or "ACS") is a local Alabama board of education located in Limestone County, Alabama.

## JURISDICTION and VENUE

3.      Plaintiff invokes jurisdiction of this Court pursuant to 28 U.S.C. Sections 1332. Thus, the parties to this action are citizens of different states and the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost.

4.      This action properly lies in the Northern District, Northeastern Division, of the United States District Court of Alabama because a substantial part of the events giving rise to this claim occurred in Limestone County.

## FACTS

5.      Grade Results is the leading innovator of live one-to-one online instruction, providing a comprehensive set of services to public, private, charter and alternative schools, as well as community colleges and universities.

6.      As a part of its growing online services, Grade Results sought to expand its services to reach incarcerated and/or detained youth in Alabama county jails and detention facilities.

7.      Grade Results' services were needed because, as a result of their incarceration, the detained youth could not otherwise continue their formal public education and earn a high school diploma.   Grade Results provided these youth and ACS with a viable option of educating them while they were detained, thereby increasing the likelihood that said youth would be able to obtain a high school diploma and aid them into becoming productive citizens.

8.      Moreover, ACS had interest in Grade Results' online services because under Alabama laws, § 16-46A-1 and §16-46A-2, it was required to implement a virtual education program for these eligible students.

9.      In an effort to evaluate the detained youth, Grade Results surveyed and met with sheriff departments throughout the State of Alabama.  This lead to the identification of at least over 600 youth who were eligible for the online education program.

10.     After learning of this information and armed with the state's mandate, ACS decided that it wanted to hire Grade Results to provide comprehensive virtual education courses for these youth.

11.     Accordingly, the Parties entered into a three year Agreement on or about July 18, 2016 through June 2019.

12.     The planned objective was that Grade Results would identify the youth for their program by evaluating each student's educational needs, such as grade level and/or need for special education services.  Upon receiving an initial report from Grade Results, ACS was then charged with: (1) securing the students' transcripts from their previous school; (2) provide Grade Results with Individual Educational Plan ("IEP"); (3) and ultimately ACS would then register said students into its Athens Renaissance School- Virtual Education Program ("ASC-VP").

13.     While ACS was gathering all of the students' background information, Grade Results would allow the students to start their virtual education classes.  Not only did Grade Results provide these online services, Grade Results also had teachers and counselors onsite at detention centers to assist and provide one-on-one services to the students.

14.     In total, Grade Results was active at eight (8) facilities throughout Alabama.

15.     As a student was released from the detention center, Grade Results would continue to allow that student, if they so desired, to continue their online education for free.

16.     Meanwhile, a new student would undoubtedly be brought to the detention center and Grade Results would initiate the enrollment process with them. Thus, it resulted in the program having a "rolling" registration or enrollment lists because students could be added or removed as a result of their detention status.

17.     This situation was not new to the Parties, and in fact, the Parties acknowledged this likely potential in their contract discussions.  It was decided that the transitionary status of the students, i.e., students being released from the detention centers, would not pose a problem for the success of the program.  Indeed, the Parties addressed this situation by labeling each student participating in the program as "Licenses."

18.     ACS would receive federal and state funding, in addition to special education funds, for those who qualified, on a per License basis.  Said funding could easily be as much as $10,000 per License.

19.     In turn, Grade Results would be paid a fee of $4,300.00 for each License that participated in the ARS-VP online educational program.

20.     In addition, per the Agreement, Grade Results would pay ACS for certain services related to the implementation of the program, such as cost of personnel, supplies, and other materials.  To date, Grade Results has paid ACS $80,000.

21.     After the execution of the Agreement, Grade Results began implementing its services by: (1) visiting the detention centers, (2) met with potential students; (3) evaluated potential students' interests in participating in the program; (4) sought registration of qualified students; (5) sought procurement of participating students' transcripts; and (6) provided onsite teachers and counselor to assist with education of the students.

22.     However, Grade Results was met with opposition from ACS.  For example, instead of timely registering the students like ACS state it would, it delayed registration of some of the students and/or failed to register participating students.  Additionally, ACS failed to secure transcripts and IEPs for the participating students.

23.    ACS's failures and opposition caused Grade Results to either complete ACS's assigned task (i.e., preparation of IEPs), proceed forward without all of the sought information for the students, and/or stalled its implementation at certain detention centers.

24.    In an effort to mitigate these setbacks, Grade Results met with ACS. Instead of acknowledging its shortcomings, ACS blamed Grade Results for the incompletion of the tasks.

25.    Additionally, ACS began to question the legitimacy of Grade Results program and the participants.   For its attack, ACS used outdated and/or incomplete records to discount the number of participants in the program.   Furthermore, in March 2017, ACS told Grade Results that it could no longer offer the program on behalf of ACS—essentially terminating the contract.

26.    To date, Grade Results has submitted 489 students or Licenses of which ACS received funding for 455.   ACS would not have received this funding if it was not for Grade Results' efforts.   Even though it received this funding, ACS has refused to pay Grade Results its fee of $4,300 per License--$2,102,700.

## **COUNT I-Breach of Contract**

27.    Plaintiff adopts and realleges paragraphs above, as if set out in full herein.

28.     Plaintiff and Defendant entered into a written Agreement that specifies, among other things, Grade Results' payment for its services.

29.     Defendant breached this agreement by failing to provide Grade Results with each student's transcript, failing to register each student that sought enrollment, and by hindering Grade Results.

30.     Moreover, Defendant failed to provide the services that Grade Results paid it $80,000, as well as, failed to pay Grade Results for the 489 students that were registered in the program.

31.     As a result of Defendant's intentional breaches of the Agreement, Grade Results was damaged.

WHEREFORE, PREMISED CONSIDERED, Plaintiff demands judgment against Defendant for compensatory damages, interest, attorney fees, costs of court, and such other equitable relief as may be deemed appropriate.

## JURY DEMAND

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS.

Respectfully submitted,

*/s/ Andrew P. Campbell*
Andrew P. Campbell (ASB-1555-L40A)
Attorneys for Plaintiff

7

**OF COUNSEL:**
Andrew P. Campbell (ASB-1555-L40A)
Yawanna McDonald (ASB 9372-B58T)
Asher Kitchings (ASB-1788-P06J)
CAMPBELL GUIN, LLC
505 20th Street North, Suite 1600
Birmingham, AL 35203
Telephone: (205) 224-0756
andy.campbell@campbellguin.com
yawanna.mcdonald@campbellguin.com
asher.kitchings@campbellguin.com


The Defendant will be served by Certified Mail at the Following Address:

Athens City Board of Education
455 US Highway 31 North
Athens, AL 35611